McCall *et al.* v. Flippin, Adm'r, *et al.*

McCALL *et al. v.* FLIPPIN, Adm'r, *et al.*

1. RESULTING TRUST. *How created. Use of Ward's money by Guardian.* A resulting trust can only arise out of the original transaction when title is taken; such a trust does not exist in favor of wards whose money has been applied by their guardian in payment for land, where the title has fixed in such purchaser previous to his guardianship.

    Cases cited: Moffit *v.* McDonald, 11 Hum., 460; 1 L. C. in Eq., Notes to Dyer *v.* Dyer; Gee *v.* Gee, 2 Sneed, 395; Story's Eq. Jur., ¿ 1258; Sanford *v.* Weedon, 2 Heisk., 76; Perry on Trusts, ¿¿ 127, 135; Caplinger *v.* Stokes, Meigs' R., 175.

2. SAME. *Same. No lien in favor of Ward. When.* When land has been purchased by guardian with minor's funds, no lien exists in their favor, in the absence of resulting trust.*

FROM SMITH.

Appeal from the Chancery Court.  WM. G. CROWLEY, Chancellor.

HEAD & SONS for McCall *et al.*

A. A. SWOPE and S. M. FITE for Flippin *et al.*

McFARLAND, J., delivered the opinion of the Court.

About the 4th of April, 1856, A. S. Bains purchased at a Chancery sale, a tract of land sold under a bill for that purpose, in the settlement of the estate of A. Moore, who had died seized and possessed of the land. The price to be given amounted to $10,185; $202 was

---

* This case is reversed, the Court, upon its own motion reviewing and citing *Gannaway* v. *Tarpley*, 1 Cold., 572, and *Turner* v. *Petigrew*, 6 Hum., 438, say: Yielding to the authority of these cases, we are brought to a conclusion directly opposite to the result of the foregoing opinion. Yet I am, myself, of the opinion that upon principle the distinction taken in the case of *Gannaway* v. *Tarpley* is not sound."—McFARLAND, J.

paid in hand, and two notes, each for $4,990 50, due severally in one and two years were given for the remainder. The sale was confirmed and the title vested in Bains, August, 1856, but a lien retained to secure the unpaid notes. About March, 1857, said Bains was appointed guardian of the complainants, who were the minor heirs of David McCall, deceased, and it is alleged by them that said Bains received a large amount of funds due them, and with these funds paid said two notes given for the balance on said Moore tract of land. In the bill it is alleged that all of said two notes were paid with their funds, but in argument it is contended that at least a large part of said notes were so paid, and the balance paid probably with other funds. Bains died about 1863, and his estate was being administered as an insolvent estate by the defendant (Flippin) as administrator, when this bill was filed for the purpose of setting up in favor of the complainants a resulting trust in the Moore tract of land; and it is now urged for them that they are entitled to this relief, or if not, that they are entitled to a lien upon the land to the extent it may appear that their funds were used in paying for it. The question of fact as to the payment of the two notes with the funds of the complainants is earnestly controverted. The facts in proof are about as follows: The two notes were paid in several different payments, running from the 15th of April, 1857, to the 9th of November, 1858, when the last payment was made—$3,521 03, there then being a judgment for the unpaid balance on the notes. It is conceded in

argument by complainants' counsel that the weight of proof is that this last payment was not paid with the funds of complainant, but with funds that had shortly before that date come to Bain's hands as administrator of the estate of one Bridges. The evidence for complainants is that on the 12th of March, 1857, the day Bains was appointed guardian, Joseph Payne, the executor of the will of David McCall, deceased, turned over to said Bains $6,583.61 for his wards, coming from their father's estate. Payne, in his deposition, says that this was all in good cash notes, on good and prompt men, well secured. No notes or names, however, are specified. No account was ever given of these notes, nor were any notes or other securities found by the administrator corresponding with this fund, or in any way shown to be the fund of the minòrs. It is not shown that Bains ever loaned any money as the money of his wards. In his settlement he charged himself in general terms with an amount something like equal with the sum turned over ᴛo him by Payne.

It is insisted by complainant that these funds must have been used in paying complainant's land notes, for the reason that Bains had not, from any other source, the means to make the payments. In answer to this, the defendants undertake to show that Bains did have the means to make the payment outside of the funds of complainant. They show that he sold another tract of land owned by him, about two weeks after he bought the Moore land, for the

purpose of helping him to pay for the Moore land. That he also sold part of the Moore tract for the same purpose, and that he had other sources from which he might have received money. Without going further into details, we think the proof shows that he received in payment of other lands several sums which, from the dates, he might have used in paying the balance on the Moore land, and probably did so. But it does not clearly appear that he received from such sources an amount sufficient to pay said two notes in full. We will not undertake to specify amounts. Where the balance came from we can not say. There does arise a pretty strong inference that if he had any money of his wards he used it for this purpose, for it is proven that he said, shortly after he bought the Moore land, that he was going to become guardian of complainants, and their funds would be coming into his hands, and he could or would use it in paying for this land, and pay up the minors when they became of age. This is strengthened by the fact already stated that no other account is given of the notes turned over to him by Payne. Yet there is no proof that Bains actually collected on the notes turned over to him by Payne the amount specified. There is evidence that he collected $800 and upwards.

It has been often held that to establish a resulting trust, upon proof that the complainants' money paid for the property, the proof must be clear and satisfactory, or as expressed by this Court, the con-

science of the Court should be fully satisfied. 2 Heisk., 76. It is not enough to show that the party had such a fund that he might have so used. 11 Hum., 460.

From the proof we think there is no reasonable doubt that Bains did use complainants' funds in paying said two notes, but what part of said notes were so paid we can not now determine.

But complainants are not entitled to the land by way of resulting trust, conceding that their money paid these notes. A resulting trust must arise, if at all, out of the original transaction. A subsequent use of the complainants' money in paying for land previously purchased, when no such relation existed, will not raise the trust. "After the legal title has once passed to the grantee, it is impossible to raise a resulting trust so as to divest that legal estate by the subsequent application of the funds of a third party to the improvement of the property, or to satisfy the unpaid purchase-money. The trust must arise, if at all, at the time of the execution of the conveyance. See vol. 1 Leading Cases in Eq., Notes to *Dyer* v. *Dyer*, where the authorities are collected; *Gee* v. *Gee*, 2 Sneed, 395.

In this case Bains purchased the land, and was vested with the title before he became guardian for complainants, or received their funds. At the time he was vested with the title, no such trust attached to it, and, as we have seen, this could not result from the use of the money afterwards.

But it is argued that if the complainants are not

entitled to this relief, that they have a right to follow their money so vested in the land, and to a lien upon the land for the amount so used. The principle is stated by Judge Story as follows:

"Whenever the property of a party has been wrongfully misapplied, or a trust fund has been wrongfully converted into another species of property, if its identity can be traced, it will be held, in its new form, liable to the rights of the original owner, or *cestui qui trust.*" Story's Eq. J., § 1258. "Thus, for instance, if a trustee, in violation of his duty, should lay out the trust money in land, and take a conveyance in his own name, the *cestui qui trust* would be without any relief at law. But a Court of Equity would hold the *cestui qui trust* to be the equitable owner of the land, and would decree it to him accordingly; not upon any notion that he had ratified the act, but upon the mere ground of a wrongful conversion creating *in foro conscientiæ* a trust in his favor." *Ib.*, § 1260.

Is this principle different from the doctrine of a resulting trust? It will be seen that Judge Nicholson, in *Sanford* v. *Weedon*, 2 Heisk., 74, in defining the three classes of resulting trusts, lays down as the first and most simple form the case stated by Judge Story above; and in *Moffit* v. *McDonald*, 11 Hump., 457, the above sections from Story's Equity Jurisprudence are referred to as the principle of a resulting trust, and in reference to the character of trust treated of by Judge Story as above, Judge Totten says the

McCall *et al. v.* Flippin, Adm'r, *et al.*

trust must arise out of the relations between the parties and state of facts existing at the time of the pnrchase. It can not be raised by matters accruing subsequent to the purchase, and not in contemplation of the parties at the time."

The question is, can the complainants have a lien upon this land for the amount of their money used in paying the notes given for it, when they can not have a resulting trust set up in their favor to the land, for the reason already referred to?

If they were entitled to a resulting trust, then, as a general rule, they could elect to take the fund and have a lien declared upon the land to enforce it. But are they entitled to take such a lien in any case where they could not, at their election, take the land as equitable owners. In other words, is there any principle upon which they are entitled to a lien on the land different from the principle of a trust resulting from the use of their money in paying for it? We are aware of none. Now, are the complainants defeated upon the ground already stated that the trust did not arise out of the original transaction, that the trust did not attach to the land at the time the title was vested in Bains? In other words, did Bains convert their money into this land, or did he simply pay his debts with it? debts for which the land had already been conveyed to him?

In the late work of Perry on Trusts the subject is treated in a chapter headed "Resulting Trusts," in which the several classes of resulting trusts are dis-

cussed, and among others the cases where property is purchased and the title taken in the name of one person, while the consideration is paid by another, which the author illustrates as follows: "And so, if a person having a fiduciary character purchase property with the fiduciary funds in his hands, and takes the title in his own name, a trust in the property will result to the *cestui que trust,* or other person entitled to the beneficial interest in the fund with which the property was purchased. As if a trustee purchase with the trust fund and take the title in his own name, the trust results to the *cestui que trust.* If a guardian purchase with the money of his ward, a trust will result to the ward, etc." See § 127; Meig's R., 175.

After illustrating the doctrine further, and discussing its other incidents, the author, in speaking of this precise character of trusts, says: " The trust must result, if at all, at the instant the deed is taken and the legal title vested in the grantee. No oral agreements, and no payments before or after title is taken will create a resulting trust, unless the transaction is such at the moment the title passes that a trust will result from the transaction itself." See § 135.

So it will be seen that this principle (that the trust must result, if at all, at the time the title is taken), is applied to the very case in hand, where the money of wards is sought to be followed on the ground that the guardian has invested the money in

lands, taking the title to himself. And in this respect there is no distinction between this and other sulting trusts; and there is no principle upon which the wards are entitled to a lien upon the land for their money, except upon the principle that in equity they are entitled to the land by way of resulting trust, in which case, at their election, they may have the fund and a lien upon the land to enforce it; but if the resulting trust be not established, they can have no lien upon the property. The question here is between complainants and other creditors. The notes in this case were a lien upon the land, but the doctrine of subrogation only applies as between parties standing in the attitude of principal and security. I am of opinion that the decree of the Chancellor should be affirmed.